**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **SASHA RODRIGUEZ and** | : | **07cv1866 (WWE)** |
| **CATHELYN GREGOIRE,** | : | |
| **on behalf of all persons similarly** | : | |
| **situated,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SLM CORPORATION and** | : | |
| **SALLIE MAE, INC.,** | : | |
| **Defendants.** | : | |

<u>**MEMORANDUM OF DECISION ON MOTION TO DISMISS**</u>
<u>**AMENDED COMPLAINT**</u>

In this action, plaintiffs Sasha Rodriguez and Cathelyn Gregoire, on behalf of

themselves and the putative class, sue defendants Sallie Mae Incorporated and SLM

Corporation for violation of the civil rights laws, the Equal Credit Opportunity Act

("ECOA") and the Truth in Lending Act ("TILA") stemming from allegedly discriminatory

policies for the underwriting of private student loans.  Defendant Sallie Mae has filed a

motion to dismiss.  For the following reasons, the motion to dismiss will be granted in

part and denied in part.

**BACKGROUND**

For purposes of ruling on this motion, the Court takes the facts alleged in the

complaint to be true.

Plaintiff Sasha Rodriguez is a Hispanic woman and plaintiff Cathelyn Gregoire is

an African-American woman.  Each plaintiff alleges that Sallie Mae has charged her an

unreasonably high interest rate and additional fees compared to the rate and amount of

fees charged to similarly-situated Caucasians on private student loans.

Rodriguez attended McIntosh College to obtain an Associates of Science degree. Between 2003 and 2005, Rodriguez borrowed $19,500 in private student loans that were underwritten by Sallie Mae.  In September 2005, Rodriguez's loan went into repayment status at the disproportionately high interest rate of 18.25%.   As of November 1, 2007, Rodriguez's loan debt had reached $33,000.

At the time that Rodriguez took out the private student loans, the true interest rates and fees were not revealed to her by her lender, loan servicer or school. Rodriguez cannot afford to make payments as Sallie Mae demands.  As a result, Sallie Mae has harassed Rodriguez and humiliated her by calling her landlord.

In 2003, Gregoire was provided financial aid documents by her school, International Academy of Design and Technology.  Subsequently, a Sallie Mae Signature Student Loan was processed on her behalf.  She was informed that she would receive an interest rate of approximately 7% on any student loan she received.   In June 2003, Sallie Mae denied Gregoire's loan application stating that she could not be approved on a stand alone basis.

In July 2003, Gregoire attended classes with the understanding that she would eventually receive a loan with a 7% interest rate from Sallie Mae.

In August 2003, Sallie Mae sent Gregoire a letter requesting that she send another application for a CEC Signature Loan.  In September 2003, after Gregoire had begun classes, she was approved for a $14,276 CEC Signature Loan.  Subsequently, she discovered that the loan contained a 6% "supplemental fee" at disbursement and an index of 5.5% over prime, which, as of December 2007, equated to a 13.25% interest rate.

In February 2004, Gregoire received a letter rejecting her CEC Signature Loan application with her sister Jessica Gregoire as coborrower because the "coborrower did not meet certain eligibility requirements."  Sallie Mae sent Gregoire a letter reminding her to return another loan application.  Sallie Mae took part in underwriting Gregoire's private student loans through both a credit scoring and judgmental credit review system.[1]

As of December 2007, Gregoire had approximately $20,000 in Sallie Mae underwritten private student loans, with a monthly payment of $800.  Gregoire was not made aware of the terms of her loans until after consummation of the transaction, and Sallie Mae has still not accurately disclosed all of the fees charged on the loans.

Sallie Mae utilizes an automated underwriting system to aid in determining the rates and fees charged on a particular loan.  First, Sallie Mae determines the rates and fees available to a particular student based on the school the student attends.  Second, Sallie Mae considers a student's or the co-signer's credit history to determine the exact rates and fees to be charged within the ranges available at the student's particular school.

Sallie Mae's underwriting process considers the federal cohort default rate of each applicant's school.  The cohort rate is released yearly and adjusts according to the percentage of a school's borrowers who default on certain federal student loans during a particular federal fiscal year.  The higher a school's cohort rate, the more likely the student is to receive disproportionately higher interest rates as well as add-on fees charged to the private student loan applicant.  The additional fees charged on the loan

---

[1]In 2004, Gregoire left the International Academy of Design and Technology.  She later obtained her Associates of Arts degree from Tallahassee Community College.

3

include a "prepaid finance" charge, "disbursement" fee, "repayment" fee, insurance premium, or "supplemental fee."  Sallie Mae has intentionally failed to disclose these fees to applicants.

Sallie Mae knows that a disproportionate number of schools with high minority populations have higher cohort rates than those of schools without high minority populations.

Due to Sallie Mae's determination of rates and fees based on the school that the student attends, a student attending a school with a high minority population does not have the same rates and fees available as a similarly-situated Caucasian attending a school with a lower minority population.

Sallie Mae's underwriting process also involves the use of a credit score produced by formulas, which are created by Sallie Mae and not disclosed to applicants.

Sallie Mae waited to make disclosures required by TILA until plaintiffs and class members had already begun classes or until their schools had received the loan funds, at which time plaintiffs and class members had no choice but to accept the loan terms or to forego school for a semester.  Often, Sallie Mae failed to disclose fully the loan terms to an applicant.

In an effort to conceal information until after consummation of the loan transaction, Sallie Mae would not allow students to manage their loans online, where the required information might be found, until after the student had received the borrowed funds.   Sallie Mae's late disclosure denied plaintiffs and class members the ability to compare various credit terms available to them.

4

Sallie Mae also violated TILA by failing to provide a statement of the consumer's right to obtain, upon written request, a written itemization of the amount financed.

**DISCUSSION**

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F. 2d 774, 779 (2d Cir. 1984).  When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).  A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Iqbal v. Hasty, 490 F.3d 143, 157 (2d Cir. 2007), cert. granted, 128 S. Ct. 2931 (2008) (applying flexible "plausibility standard" to Rule 8 pleading).

**Disparate Impact under ECOA**

Defendant Sallie Mae argues first that a disparate impact claim cannot be sustained under ECOA.  Sallie Mae advances its argument in reliance upon the reasoning of Smith v. City of Jackson, 544 U.S. 228 (2005).

In Smith, the Supreme Court reasoned that section 623(a)(2) of the Age Discrimination in Employment Act ("ADEA") provides for disparate impact claims based on language that an employer may not "limit, segregate, or classify his employees in any

way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age."  By contrast, the Court noted that section 623(a)(1) does not give rise to disparate impact claims due to its language prohibiting certain employment actions "because of such individual's age."   The Court reasoned that language that "focuses on the effects" or impact rather than the motivation of an employment action provides the foundation for a disparate impact claim.

ECOA provides:  "It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction — (1) on the basis of race . . . . "  15 U.S.C. § 1691(a).  Sallie Mae now argues that ECOA lacks "effects" or "impact" language that would give rise to a disparate impact cause of action.

Several district courts have considered and rejected this same argument.  Courts have held that Smith should not be read so broadly that it provides a test for determining whether a statute supports a disparate impact claim.  Taylor v. Accredited Home Lenders, Inc., 580 F. Supp. 2d 1062, 1067 (S.D. Cal. 2008) (citing cases); Ramirez v. Greenpoint Mortgage Funding, Inc., 2008 WL 2051018, *4 (N.D. Cal).  In light of the early stage of this action and the recent decisions that Smith does not preclude ECOA disparate impact claims as recognized in pre-Smith precedent, the Court will deny the motion to dismiss on this ground.

**Disparate Impact Under 42 U.S.C. § 1981**

Defendant Sallie Mae argues that plaintiffs cannot allege a disparate impact claim pursuant to section 1981.  Plaintiffs clarify that they are only alleging intentional discrimination pursuant to section 1981.

6

**Inadequate Allegations of Intentional Discrimination**

Defendant asserts that plaintiff alleges intentional discrimination in conclusory terms that cannot survive the standard set by Twombly, 127 S. Ct. at 1964-65.

A defendant acts with discriminatory purpose when it selects a particular course of action at least partly "because of," rather than "in spite of," its adverse effects upon an identifiable group.  Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979). Plaintiffs have alleged that Sallie Mae works in concert with schools to funnel students into loans underwritten by Sallie Mae; that Sallie Mae knows that a disproportionate number of schools with minority populations have higher cohort rates compared with those of schools with largely non-minority populations; that Sallie Mae has implemented an underwriting process that uses a credit score produced by formulas created by Sallie Mae for racially discriminatory purposes; that Sallie Mae has concealed its actuarial basis and credit factors from its applicants; and that Sallie Mae has achieved its discriminatory goal of charging minorities more for the lending of less desirable loans through such artifices.  The Court finds that such allegations describe conduct taken "because of" the alleged racial discriminatory purpose.  Accordingly, plaintiffs have alleged sufficient intentional conduct to withstand a motion to dismiss.

**TILA**

 Defendant argues that plaintiff's TILA claims are untimely because the one-year statute of limitations had run prior to the December 2007 filing of this action.[2]

---

[2] 15 U.S.C. § 1640(e)

TILA's statute of limitations runs from the date of consummation of the transaction.  Pettola v. Nissan Motor Acceptance Corp., 44 F. Supp. 2d 442, 449 n.8 (D. Conn. 1999).  Defendant requests that the Court take judicial notice of the disclosure statements for the purpose of establishing the dates of the loans' origination.   The Court finds that the complaint references the disclosure statements and that the origination dates are integral to the complaint.   Accordingly, the Court takes consideration of the disclosures statements for purposes of determining that Gregoire obtained a student loan that originated in September 2003, and that Rodriguez obtained two private Signature Student Loans that originated in October 2003 and July 2004, respectively. Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995).

Plaintiffs counter that equitable tolling based on fraudulent concealment applies to delay the commencement of the running of the statute of limitations.  Plaintiffs' allegations of fraudulent concealment are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b) and must be stated with particularity.  Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 582 (2d Cir. 2005).

In order to satisfy Federal Rule of Civil Procedure 9(b), a complaint must: (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent.  Antian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88 (2d Cir. 1999).  Plaintiffs may make general allegations of malice, intent, knowledge or other state of mind, but the facts must give rise to a strong inference of fraudulent intent. Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).  The purpose of the specificity requirement is: (1) to ensure that a complaint provides defendant with fair

8

notice of the plaintiffs' claim; (2) to safeguard defendant's reputation from improvident charges; and (3) to protect defendant from a strike suit.  O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991).

For the federal doctrine of fraudulent concealment to apply, plaintiffs must show: (1) that defendant engaged in a course of conduct to conceal evidence of defendant's alleged wrong-doing; and (2) that plaintiffs failed to discover the facts giving rise to their claim despite their exercise of due diligence.  Pettola v. Nissan Motor Acceptance Corp., 44 F. Supp. 2d 442, 450 (D. Conn. 1999).  Plaintiffs must show that they exercised due diligence during the relevant time period and that defendant's act of fraudulent concealment frustrated discovery of their cause of action.   Id.

In the instant complaint, plaintiffs have alleged that defendant took steps to conceal relevant information to students by (1) encouraging its agents to confuse borrowers when inquiries were made; (2) not allowing students to manage their loans online, where they may have had access to the required TILA information; and (3) training its sales force to avoid disclosure of the loan terms.   The Court finds that these allegations of concealment satisfy the heightened pleading requirement.

Plaintiffs' complaint asserts further that they could not ascertain their cause of action until just prior to filing this action due to such concealment, and that their attempts to discover relevant information were blocked due to Sallie Mae's deceptive tactics such as training and encouraging its sales force to confuse plaintiffs and not disclose the required TILA information.   These allegations fail to establish with particularity how plaintiffs satisfied their due diligence requirement.  Accordingly, the Court will grant the motion to dismiss without prejudice on this ground.  The Court will allow plaintiffs the

opportunity to replead the complaint to allege the steps or efforts that they took to obtain information about their loans and thereby determine their cause of action.

**CONCLUSION**

For the foregoing reasons, the motion to dismiss [doc. #51] is DENIED in part and GRANTED in part.  The Court GRANTS the motion to dismiss without prejudice as to the TILA claim.  Plaintiffs are instructed to amend the complaint consistent with this ruling within fifteen days of this ruling's filing date.


_____/ s /_____
Warren W. Eginton, Senior U.S District Judge


Dated this _6th_ day of March 2009 at Bridgeport, Connecticut.