```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

|  |  |
|---|---|
| SASHA RODRIGUEZ, et al | : |
| v. | : CIV. NO. 3:07CV1866 (WWE) |
| SLM CORPORATION and SALLIE MAE, INC. | : |

## RULING ON DEFENDANTS' MOTION FOR PROTECTIVE ORDER QUASHING DEPOSITION SUBPOENAS

Defendants SLM Corporation and Sallie Mae, Inc. move for a protective order and to quash the deposition subpoenas served on two former senior-level executives, Kevin Moehn and Barry Goulding. Defendants argue that: (1) Moehn and Goulding, who were members of Sallie Mae's Executive Management Team during their tenures, lack unique personal knowledge of Sallie Mae's origination and underwriting of the private student loans at issue in this action; (2) neither Moehn nor Goulding possesses information that plaintiffs cannot obtain by less intrusive means, including the depositions of subordinate employees; and (3) the depositions of Moehn and Goulding would serve only to burden and harass. [Doc. #148-2 at 1].

Background

1

Defendants represent that Moehn and Goulding held the following positions and responsibilities at Sallie Mae.

> Moehn began his employment with Sallie Mae in 1995, and he was Executive Vice President for Sales and Originations from July 29, 2004 through December 31, 2007. In his Executive Vice President position, Moehn led Sales and Origination for Sallie Mae. This unit aligned Sallie Mae's front-end customer acquisition and Federal Family Education Loan Program (FFELP) loan origination teams into one organization. He also provided leadership to Sallie Mae's higher education national sales force and was a member of the senior executive management team. Moehn was a direct report to Sallie Mae's Chief Executive Officer.
>
> Goulding commenced his employment with a predecessor of Sallie Mae in 1978, and he was Senior Vice President of Sales Management from April 28, 2001 through December 31, 2007. In his position as Senior Vice President, Goulding was responsible for management and oversight of a wide range of sales and lending functions, including Sallie Mae's federally guaranteed and private education loan products and online tools. Goulding was a direct report to Sallie Mae's Chief Executive Officer.
>
> Neither Moehn nor Goulding currently is employed by Sallie Mae or by co-defendant SLM Corporation. In December 2007, prior to the departure of Moehn and Goulding, out of thousands of employees, Sallie Mae had twenty-two Senior Vice Presidents, three Executive Vice Presidents, a CEO and an Executive Chairman. The Senior Vice Presidents and above are considered the Executive Management Team.

[Doc. #148-2 at 2-3].

Subpoenas

Plaintiffs served subpoenas for the depositions of Moehn and Goulding on or about May 21, 2009.  The subpoenas demanded that Goulding appear for deposition on June 15, 2009 in Silver Spring, Maryland and that Moehn appear for deposition on June 16, 2009 in Reston, Virginia.  Id. at 3.  The depositions did not go forward to permit defendants to file this motion for protective order.

Discussion

Defendants argue that Moehn and Goulding, who were members of Sallie Mae's Executive Management Team during their tenures, lack unique personal knowledge of Sallie Mae's origination and underwriting of the private student loans at issue in this action.

While there is "no per se rule barring depositions of top corporate executives," "courts frequently restrict efforts to depose senior executives where the party seeking the deposition can obtain the same information through a less intrusive means, or where the party has not established that the executive has some unique knowledge pertinent to the issues in the case." Cardenas v. Prudential Insurance Co. of America, Nos. Civ. 99-1421 (JRT/FLN), Civ. 99-1422 (JRT/FLN), Civ. 99-1736 (JRT/FLN), 2003 WL 21293757, *1 (D. Minn. May 16,2003) (citing Salter v. Upjohn, 593 F.2d 649, 651 (5th Cir. 1979)); Burns v. Bank of America, No. 03 Civ. 1685 (RMB)(JCF), 2007 WL 1589437, at *3

(S.D.N.Y. Jun. 4, 2007) (citation omitted) ("Unless it can be demonstrated that a corporate official has some unique knowledge of the issues in the case, it may be appropriate to preclude a deposition of a highly-placed executive while allowing other witnesses with the same knowledge to be questioned."); Malletier v. Dooney & Bourke, Inc., No. 04 Civ. RMB MHD, 2006 WL 3476735, *12 (S.D.N.Y. Nov. 30 ,2006) ("courts have agreed that if a party seeks to depose a very senior official of an adversary entity, the adversary may obtain an order vacating the deposition notice if it can demonstrate that the proposed deponent has no personal knowledge of the relevant facts and no unique knowledge of those facts.") (multiple citations omitted). The standards that govern depositions of corporate executives apply with equal force to former executives. See Malletier, 2006 WL 3476735, *12 (disallowing deposition because defendant could not " show that [lower level witness] was unable to answer questions that [defendant] proposes to ask [former general manager]"); In re Blackstone Partners, L.P., No. 04 Civ. 7757(NRB), 2005 WL 1560505, at *3 (S.D.N.Y. Jul. 1, 2005) (affirming bankruptcy court order quashing subpoena to former senior managing director at non-party partnership, which "would be cumulative and would subject [non-party partnership] to undue burden.").

　　The Court finds that plaintiffs have not demonstrated that Moehn or Goulding possess any information that could not be

4

obtained from lower level employees or other sources, much less that they possess "unique factual information and institutional knowledge necessary to the prosecution of this case." [Doc. #178 at 1].  Further,  plaintiffs have not "sought to question lower level corporate officials with similar knowledge before asking this Court to compel the depositions of [higher level executives]." Id.  (quoting Six West Retail Acquisition, Inc. v. Sony Theatre Management Corp., 203 F.R.D. 98, 104 (S.D.N.Y. 2001)). Plaintiffs object to the defendants' designated 30(b)(6) witness David West, claiming that he "cannot provide the same information as Goulding and Moehn" as he became "Chief Lending Officer of Sallie Mae, Inc. in the summer of 2008, several years after the origination of the student loans at issue in this case." [Doc. # 178 at 5]. It is not clear how plaintiffs can know the extent of Mr. West's knowledge in this case without ever speaking to him. The scope of Mr. West's information is best clarified by proceeding with his deposition.[1]

    Once Mr. West or others identified as knowledgeable by defendants have been questioned, plaintiffs may renew their request to depose higher level executives upon a showing that there is reason to believe they have "unique factual information and institutional knowledge."

---

[1] "Plaintiffs anticipate that Mr. West may be a useful witness to respond to the limited topics of underwriting that defendants have agreed to discuss." [Doc. #178 at 5].

<u>CONCLUSION</u>

For the foregoing reasons, defendants' Motion for Protective Order Quashing Deposition Subpoenas **[Doc. #148]** is **GRANTED**.

This is not a recommended ruling.  This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. § 636 (b)(1)(A); Fed. R. Civ. P. 6(a), 6(e) and 72(a); and Rule 2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at Bridgeport this 26th day of March 2010.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE