```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
                                     :
SASHA RODRIGUEZ, et al               :
                                     :
                                     :
v.                                   :   CIV. NO. 3:07CV1866 (WWE)
                                     :
SLM CORPORATION                      :
and SALLIE MAE, INC.                 :
                                     :
                                     :
                                     :
                                     :
```

RULING ON PLAINTIFF'S MOTION TO COMPEL PROPER RESPONSES TO PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION **[Doc. #211]**  DEFENDANTS' MOTION FOR PROTECTIVE ORDER AGAINST DISCOVERY OF ATTORNEY CLIENT PRIVILEGED COMMUNICATIONS
AND ATTORNEY WORK PRODUCT **[DOC. #213, 215]**

Plaintiffs move for an order compelling responses to Second Set of Requests for Admission ("RFA") Nos. 32, 34, 37, 39, and 64-67.[1] **[Doc. #211].** In response, defendants seek an order of protection, arguing that the information sought by the following RFAs is protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. [**Doc. #213 (redacted motion); #215 (unredacted motion submitted under seal and for in camera review)**].

---

[1] During the parties' meet and confer, defendants agreed to provide a response to RFA No. 63. [Doc. #217 at 6].

1

Request for Admission No. 32: Sometime between 2002 and present, Sallie Mae analyzed or studied the interest rates or fees charged on Sallie Mae private student loans at historically black colleges and universities.

Request for Admission No. 34: Sometime between 2002 and present, Sallie Mae concluded that school specific factors used to underwrite private student loans increased the interest rate or fees of some Sallie Mae private student loans between 50 and 100 basis points.

Request for Admission No. 37: Sallie Mae is aware that the use of a school's default history in underwriting private student loans has a disproportionately negative impact on minority borrowers.

Request for Admission No. 39: Sallie Mae is aware that use of a school's cohort default rate in underwriting private student loans has a disproportionately negative impact on minority borrowers.

Request for Admission No. 64: At some point between 2002 and the present, Sallie Mae analyzed whether the use of school-specific factors in pricing private student loans resulted in a disparate impact on applicants at schools with higher minority populations.

Request for Admission No. 65: At some point between 2002 and the present, Sallie Mae analyzed whether the use of school-specific factors in pricing student loans resulted in a disparate impact on minority applicants.

Request for Admission No. 66: At no point between 2002 and the present has Sallie Mae analyzed, reviewed or discussed whether use of factors in underwriting or pricing private student loans causes a disparate impact on minority applicants.

Request for Admission No. 67: At no point between 2002 and the present has Sallie Mae analyzed, reviewed or discussed whether the use of non-individual factors in underwriting or pricing private student loans causes a disparate impact on applicants at schools with higher minority populations.

Plaintiffs contend that they "are not asking that Sallie Mae disclose questions posed by its attorneys or directives made by them to defendants' company employees;" rather they are asking

2

that defendant Sallie Mae "admit or deny a <u>fact</u>-whether Sallie Mae conducted an analysis of the potentially discriminatory impact of its policies." [Doc. ##211 at 6; 216 at 6].

Further, with respect to the alleged work product privilege, "plaintiffs seek neither attorney notes or impressions, nor interviews with record custodians. Rather, at this point, plaintiffs merely seek an admission or denial as to whether defendant Sallie Mae conducted certain studies, tests or analyses, or reviewed certain types of information, to determine the impact of their private student loan underwriting and credit policies and procedures resulted in a negative impact on minority borrowers." <u>Id.</u>

> In candor, plaintiffs ultimately will seek to discover documents reflecting any testing and analyses that defendants performed in this regard including, specifically, testing aimed at uncovering discriminatory impact of defendants' private student loan underwriting and credit policies . . . In connection with discovery of those documents, plaintiffs will also seek to obtain the raw numerical results yielded by any discriminatory impact analysis, the objective numbers associated with specific college campuses, and the business data collected during the ordinary course of Sallie Mae's business-data that, for plaintiffs to collect on their own, would literally require years of discovery using hundreds of third-party subpoenas, satellite litigation and millions of dollars.

[Doc. #211 at 6 n.3; Doc. #216 at 6, n.2].

Federal Rule of Civil Procedure 26(b)(3)(A) states,

> Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the

>           other party's attorney, consultant, surety,
>           indemnitor, insurer or agent). But, subject
>           to Rule 26(b)(4), those materials may be
>           discovered if:
>
>               (i)   they are otherwise discoverable under Rule
>                     26(b)(1) and;
>               (ii)  the party shows that it has
>                     substantial need for the
>                     materials to prepare its case
>                     and cannot, without undue
>                     hardship, obtain their
>                     substantial equivalent by
>                     other means.

In support of their motion, defendants provided for <u>in camera</u> inspection the declaration of Attorney Dana Albertini, Senior Vice President and Associate General Counsel at Sallie Mae, Inc. with exhibits. [Doc. #215 unredacted motion submitted under seal for <u>in camera</u> review]. The Court has carefully considered the case law and has performed an <u>in camera</u> review and finds that the information sought by plaintiffs is protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. The Court finds that responses to the RFAs would force Sallie Mae to disclose the privileged and confidential results of the testing.[2]

On this record, the Court finds that defendants have shown that any tests, studies or analyses conducted by Sallie Mae

---

[2] For example, RFA No. 34 states: "Sometime between 2002 and present, Sallie Mae concluded that school specific factors used to underwrite private student loans increased the interest rate or fees of some Sallie Mae private student loans between 50 and 100 basis points." RFA No. 37 states: "Sallie Mae is aware that the use of a school's default history in underwriting private student loans has a disparate impact on minority borrowers." RFA No. 39 each seek substantially similar information regarding disparate impact or "disproportionately negative impact" caused by Sallie Mae's "use of a school's "cohort default rate".

constitutes work product as it can "fairly be said to have been prepared or obtained because of the prospect of litigation." US v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998); In re PolyMedica Corp. Securities Litigation, 235 F.R.D. 28, 32 (D. Mass. 2006) (applying standard to work product created by consultants, as well as by attorneys). Defendants have also shown that any tests, studies or analyses conducted by Sallie Mae were done at the direction of counsel, who directed and monitored that work. Counsel for defendants have maintained the work as confidential at all times and marked any tests, studies or analyses "attorney-client work product," "attorney-client communication" and "privileged and confidential-do not distribute or disclosure." Materials were strictly maintained as confidential and distributed only to other counsel and to the senior Sallie Mae personnel assigned to the matter.  In connection with the defense of this matter, instructions were provided to the participants, including non-legal business personnel of Sallie Mae, SLM and SMB, to preserve the confidentiality of communications and work product including any tests, studies or analyses.

As to opinion work product, "which shows the mental impressions, conclusions, opinions or legal theories of an attorney or other representative," the Second Circuit has held that "at a minimum, such material is to be protected unless a highly persuasive showing is made." United States v. Adlman, 134 F.3d 1194, 1204 (2d Cir. 1998). See also In re Grand Jury Proceedings, 219 F.3d 175 (2d Cir. 2000). Defendants have shown

that the materials contain opinion work product.

"Plaintiffs seek Sallie Mae's review and study of its own data and its awareness and opinion, as to the result of that review and study, whether a particular lending practice disproportionately impacts minority borrowers." [Doc. #211 at 10]. As Rule 26(b)(3) makes clear, a "showing of 'substantial need' sufficient to compel disclosure of other work product is not necessarily sufficient to compel disclosure of ['mental impressions, conclusions, opinions or legal theories of an attorney or other representative.']" Adlman, 134 F. 3d at 1204 (citations omitted). "The Rule is clear that, at a minimum, such material is to be protected unless a highly persuasive showing is made." Id. (citing Upjohn v. U.S., 449 U.S. 383, 402 (1981)). Plaintiffs have made no showing, beyond bare assertion, that the information sought is unavailable by other means.[3] This falls short of the heightened showing mandated by Upjohn.

---

[3]Plaintiffs state that they will seek to obtain the "raw numerical results yielded by any discriminatory impact analysis . . . data that, for plaintiffs to collect on their own, would literally require years of discovery using hundreds of third-party subpoenas, satellite litigation and millions of dollars." [Doc. #211 at 6 n.3; Doc. #216 at 6 n.2]. Defendants point out that "plaintiffs have propounded extravagant requests for production of documents in this action, which have required defendants to gather and produce hundreds of thousands of pages, at great expense.  Nowhere in those requests, however, have plaintiffs sought data or information that would allow them to perform disparate impact testing." [Doc. #217 at 3-4].

CONCLUSION

For the foregoing reasons, plaintiffs' Motion to Compel **[Doc. # 211]** is **DENIED and** defendants' Motion for Protective Order **[Doc. ##213, 215]** is **GRANTED**.

Plaintiffs' Motion for Extension of Time to Respond to Defendants' Motion for Protective Order **[Doc. #216]** is **DENIED**.

This is not a recommended ruling.  This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. § 636 (b)(1)(A); Fed. R. Civ. P. 6(a), 6(e) and 72(a); and Rule 2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at Bridgeport this 5th day of April 2010.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE