# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ) | | |
| SASHA RODRIGUEZ and CATHELYN ) | | |
| GREGOIRE on behalf of all persons ) | CASE NO:  3:07-cv-01866 | |
| similarly situated ) | | |
| ) | | |
|      **Plaintiffs,** ) | | |
| ) | | |
| vs. ) | CLASS ACTION | |
| ) | | |
| SALLIE MAE, INC. and SLM ) | | |
| CORPORATION ) | | |
| ) | May 24, 2011 | |
|      **Defendants.** ) | | |
| _____ ) | | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
## PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

## I.      INTRODUCTORY STATEMENT

Plaintiffs Sasha Rodriguez and Cathelyn Gregoire respectfully submit this memorandum in support of their motion for preliminary approval of the Proposed Settlement of this class action and certification of a Settlement Class.  The terms of the Proposed Settlement are outlined in the Settlement Agreement dated May 23, 2011 (the "Settlement Agreement" or "Agreement"), which is being filed contemporaneously with the Court as Exhibit A to the Motion for Preliminary Approval of Settlement Agreement (the "Motion").   In accordance with the Settlement Agreement, Plaintiffs, individually and as representatives of the Settlement Class defined below, have agreed to settle the claims for injunctive and declaratory relief related to school specific pricing practices asserted against defendants Sallie Mae, Inc. and SLM Corporation.  As set forth below, Plaintiffs urge the Court's preliminary approval of the proposed Settlement which  results in significant prospective relief in the form of practice changes, more robust disclosures, and a cy pres contribution funding a credit education program and minority student scholarships.  The Settlement was reached only after Plaintiffs' counsel had conducted an extensive investigation of the claims asserted in this action and had engaged in more than a year of settlement negotiations conducted in the context of a mediation process overseen by a certified mediator and former federal judge about which the Court was kept apprised.  In sum, the Settlement of this case falls within the range of what might be approved as fair, reasonable, and adequate and merits preliminary approval by the Court.  In addition, all of the requirements of Rule 23(a) and (b)(2) have been met.

For purposes of this Motion, the issue before the Court is whether the Settlement is within the range of what might be approved as fair, reasonable, and adequate in order to justify notice to the Settlement Class of the Settlement, and the scheduling of a final hearing.  At this juncture, the Court is not required to make a final determination regarding the reasonableness of the Settlement, and no Settlement Class Member's substantive rights will be prejudiced by preliminary approval.  Plaintiffs submit that the Proposed Settlement is in the best interests of the

Settlement Class and is a good result   The Settlement was the result of arm's-length negotiations between sophisticated parties and warrants preliminary approval for purposes of notifying the Settlement Class.

## II.   THE CASE

### A.   The Allegations

Plaintiffs initiated this action on December 18, 2007 against Defendant SLM Corporation ("SLM") and added Sallie Mae, Inc. as a defendant on July 17, 2008.  Plaintiffs alleged that Defendants SLM and Sallie Mae, Inc. (hereinafter together, "Sallie Mae") engaged in racial discrimination in the origination and underwriting of private student loans through use of practices including, but not limited to, school specific pricing structures which cause minority borrowers to incur higher interest rates and fees.[1]  Based on these allegations, Plaintiffs asserted claims for intentional discrimination under 42 U.S.C. section 1982, intentional discrimination and disparate impact under 42 U.S.C. section 1981, violation of the Equal Opportunity Credit Act ("ECOA), 15 U.S.C. section 1691, *et. seq.*, and violation of the Truth in Lending Act ("TILA"), 15 USC section 1601, *et. seq.*

With respect to the school-specific pricing, Plaintiffs allege that Sallie Mae's practices derive from a factor referred to as the federal cohort default rate ("CDR"), which measures the percentage of student loan borrowers at a school who default on their federal student loans within two (2) years following entry of repayment.  Plaintiffs' allegations provide that Sallie Mae utilizes the CDR to determine the interest rates and fees that will be made available to students attending any particular school or school type.  Plaintiffs further alleged that the use of school-specific CDRs exerts a disparate impact on minorities because historically black colleges and universities are documented as having high CDRs.  Also, proprietary schools experience higher default rates than not-for-profit institutions and have a disproportionate representation of

---

[1] As used herein with respect to the releases provided through the proposed Settlement,, the phrase "Sallie Mae" means all entities related to SLM that originated private student loans during the agreed class period.

minority students.  As a result, minority students applying for private student loans with Sallie Mae are receiving non-favorable pricing disproportionally to non-minority borrowers.

Additionally, Plaintiffs alleged in their complaint that Sallie Mae conceals its discriminatory underwriting practices, by not disclosing all of the underwriting factors used in setting interest rates and fees on private student loans.  Specifically, Plaintiffs alleged that Sallie Mae does not inform borrowers that their choice of school may affect the interest rate and fees charged on their private student loans.

Sallie Mae has denied these allegations, specifically denying the material allegations of liability and wrongdoing, and Sallie Mae has raised various legal and affirmative defenses.

B.      Procedural History

In August 2008, Defendants filed a Motion to Dismiss seeking dismissal of Plaintiffs' ECOA and TILA claims, as well as Plaintiffs' claims of intentional discrimination. In March 2009, the Court denied Defendants' request to dismiss Plaintiffs' ECOA and intentional discrimination claims, but granted Defendants' request to dismiss Plaintiffs' TILA claims.  Soon thereafter, Plaintiffs amended their complaint in regard to the TILA claims and in April 2009, Sallie Mae again filed a motion to dismiss these claims. On November 10, 2009, this Court dismissed Plaintiffs' TILA claim with prejudice.  The Court instructed Plaintiffs to amend their complaint excluding the Truth in Lending Act claims.  In November 2009, Plaintiffs filed a Third Amended Class Action Complaint, which is the operative Complaint in this action.

Further, in September 2008, SLM filed a motion for summary judgment on the assertion that Plaintiffs lacked standing to pursue claims against it because SLM is a holding company only and does not engage in student lending.  In June 2009, the Court took SLM's motion off calendar without prejudice to permit Plaintiffs to take discovery.

The parties then began to engage in substantial discovery, including extensive motions and briefings before this Court.  Sallie Mae produced a significant amount of documents to Plaintiffs.  Plaintiffs also produced documents to Defendants and took the depositions of a number of defense witnesses.

**C.     The Settlement Process**

In February 2010, the parties began formal settlement discussions.   Settlement negotiations were arduous and protracted, and were conducted in good faith and at arm's length. Specifically, the parties' counsel participated in numerous negotiating sessions, including three in-person mediation sessions before The Honorable Layn R. Phillips (Ret.) of JAMS and more than twenty telephonic settlement communications conducted through the mediator's office.  The most recent in-person mediation session occurred on March 28, 2011, in New York.  This proposed Settlement was reached after approximately thirteen months of hard-fought, sustained, arm's length mediation, discussions, and negotiations.

**III.    TERMS OF THE SETTLEMENT**

The proposed Settlement of this class action will provide significant benefits to minority private student loan borrowers throughout the country.  The parties have agreed, subject to Court approval, to settle Plaintiffs' claims for injunctive and declaratory relief with respect to Sallie Mae's school-specific pricing criteria, in accordance with the Settlement Agreement.  The Settlement provides three major aspects of prospective relief for the class: a cessation in the use of the CDR by Sallie Mae for a period certain, robust disclosures regarding underwriting factors use by Sallie Mae, and a cy pres contribution in the amount of $500,000 for the purpose of providing scholarships and credit education.  While Defendants have denied all of Plaintiffs' allegations, they have agreed to the following terms of Settlement.

The prospective relief directly related to the alleged racial discrimination that is obtained by this Settlement is of utmost importance to Plaintiffs, the Settlement Class, and society in general. *See Setser v. Novack Inv. Co.*, 657 F.2d 962, 966 (8th Cir. 1981) (underlying the Civil Rights legislation of the 1860s and 1960s is the judgment that a just and harmonious society requires the eradication of racial discrimination.); *Zhang v. American Gem Seafoods, Inc.*, 339 F.3d 1020, 1043 (9th Cir. 2003) (there can be no question of the importance of our society's interest in combating discrimination; this nation fought the bloodiest war in its history in part to

advance the goal of racial equality, adding several amendments to the Constitution to cement the battlefield victory.)

### A.   No Use of the Cohort Default Rate

As previously agreed with Plaintiffs during the course of the settlement negotiations, Sallie Mae did not use the CDR in underwriting private student loans from March 2010 through March 2011. Sallie Mae further agrees not to use the CDR in underwriting private student loans prior to July 1, 2011. Sallie Mae agrees that, with respect to its future underwriting criteria, it is fully subject to its legal obligations including any applicable civil rights laws.

### B.   Disclosure of Loan Underwriting Information

As part of this Settlement, Sallie Mae has agreed to provide potential borrowers certain robust disclosures and/or information related to the underwriting factors used in setting interest rates and fees on private student loans that it does not currently provide. To reach potential borrowers, Sallie Mae will post these disclosures and information on Sallie Mae's website for a period of no less than three (3) years, running from the Effective Date.

More specifically, the disclosures and information to be provided by Sallie Mae are as follows: i) a statement that approval and pricing of private student loans are based on a number of factors, including credit score; ii) a narrative comparison of the differences between federal student loans and private student loans, along with an illustration of the differences; iii) a statement that borrowers should consider the availability of federal student loans and grants before applying for private student loans; iv) a description of the underwriting factors used in setting interest rates and fees on private student loans; v) reference to the "Education Investment Planner," for so long as Sallie Mae includes the page on its website, which inclusion shall be in Sallie Mae's sole discretion; and vi) information about the consequences of student loan default.

In addition, if Sallie Mae resumes use of the CDR in underwriting private student loans prior to March 29, 2013, then for a period of two (2) years after resuming such use, Sallie Mae agrees that the Link Page on its website will include the following information: i) information that school choice can affect loan rates and terms, including that the higher the default rate of the

school attended, the higher the cost of the student loan; and ii) a statement that borrowers should educate themselves about the CDR for any school(s) they are considering and that CDR information can be obtained from the Department of Education.

      **C.**      **Cy Pres Contribution**

As part of the Settlement Agreement, Sallie Mae has also agreed to make a cy pres contribution in the amount of $500,000.  This amount will be divided equally between the United Negro College Fund and the Hispanic College Fund for the purpose of providing scholarships to students pursuing higher education and for the purpose of credit education.  The cy pres contribution will be made no later than ten (10) days after the Effective Date as defined in the Settlement Agreement attached as Exhibit A to the Motion for Preliminary Approval of Settlement Agreement.

      **D.**      **Incentive Award for Class Representatives**

The Settlement Agreement contemplates that the two Plaintiffs will seek the Court's approval of an incentive award for their roles in this case and their willingness to serve as representatives of the Settlement Class.  Sallie Mae has agreed not to oppose an application by Plaintiffs for an incentive award of up to $3,000 each, subject to Court approval.  Sallie Mae will pay any incentive awards that this Court approves at the time that any attorneys' fees and expenses are due.  No interest will accrue on the amount of such incentive awards at any time, and Court approval of incentive awards or a specific amount thereof is not a condition of the Settlement.

      **E.**      **Attorneys' Fees and Expenses**

Contemporaneously with the filing of the Motion for Final Approval, Class Counsel will petition the Court for an award of reasonable attorneys' fees and expenses.  Sallie Mae has agreed not to object to Plaintiffs' application as long as the amount requested does not exceed $1,800,000.00.  Sallie Mae will pay any attorneys' fees and expenses, up to this amount, that are

awarded by the Court pursuant to the terms of the Settlement Agreement. Court approval of attorneys' fees and expenses or a specific amount thereof is not a condition of the Settlement, and Plaintiffs will request that the Court resolve any such petition for fees and expenses separate and apart from any order approving the Settlement.

### F.    Claims Released

This Settlement succeeds in resolving a challenge to the use of school-specific pricing criteria in the underwriting of private student loans. Sallie Mae denies that any discrimination has occurred. Sallie Mae contends that its use of information from Cohort Default Rates and other school-specific factors is non-discriminatory. Nevertheless, Sallie Mae has agreed to modify its practices for the time periods set forth in the Settlement Agreement. In exchange, Plaintiffs and each Settlement Class Member will be deemed to have fully and finally released and forever discharged Sallie Mae, Inc. and SLM Corporation and all other subsidiaries or affiliates of SLM Corporation that originated or funded private student loans during the Class Period, from any and all demands, claims, causes of action, duties, obligations or liabilities for injunctive and declaratory relief, whether based on intentional or disparate impact discrimination, that have been, or could have been, asserted by Plaintiffs and the Settlement Class, in the Action or any other proceeding or forum arising out of or relating in any way to the use of any school specific pricing criteria**,** including but not limited to the Cohort Default Rate published by the Department of Education, in the origination of private student loans (collectively, the "Released Claims"). No other claims are being resolved or released as part of this settlement, including for claims for money damages.

## IV.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled.  *Manual for Complex Litigation, Fourth ("Manual Fourth")*, § 30.41 (2005).  Rule 23(e) of the Federal Rules of Civil Procedure provides that, before a class action may be dismissed or compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained.  Fed.R.Civ.P. 23(e).  Plaintiffs come presently requesting that the Court grant preliminary approval in order to authorize notifying Class Members of the terms of the Settlement, and of their opportunity to be heard regarding the Settlement at the hearing during which final approval will be considered.

In determining whether preliminary approval is warranted, the sole issue before the Court is whether the proposed settlement is fair, reasonable and adequate to justify notice to those who will be affected, affording them the opportunity to be heard.  *See, e.g., McDaniel v. County of Schenectady*, 595 F.3d 411, 418 (2d Cir. 2010); *Lessard v. Rent-A-Center East, Inc.*, 250 F.R.D. 103 (D.Conn. 2008); *In re Greenfield Online Secs. Litig.*, No. 07-cv-01118, 2008 U.S. Dist. LEXIS 84175 (D.Conn. Oct. 20, 2008); see also, *Manual Fourth* §21.632.

There is an initial strong presumption that a proposed class action settlement is fair and reasonable when it is the result of arm's length negotiations.  *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-04 (2d Cir. 2009) ("In determining whether a settlement is fair, reasonable, and adequate, the District Court examines the 'negotiating process leading up to the settlement [, i.e., procedural fairness,] as well as the settlement's substantive terms [, i.e., substantive fairness].'") (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)).  "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted."  2 H. Newberg and A. Conte, *Newberg On Class Actions* ("*Newberg*"), §11.25 (3d ed. 1992).  This Proposed Settlement is the result of particularly

lengthy, contentious and complex arm's length negotiations involving counsel on both sides who are experienced and thoroughly familiar with the factual and legal issues presented in the case.

The Proposed Settlement fully satisfies the requirements for preliminary approval, as it is well within the range of reasonableness. As explained above, the Settlement was reached only after Plaintiffs had conducted an extensive factual investigation of the claims, and it was the product of lengthy, arm's-length negotiations between the parties. Due to their comprehensive investigation, discovery in, and review of the case, Plaintiffs' Counsel were fully aware of the case's strengths and weaknesses when they engaged in the settlement negotiations. Plaintiffs' Counsel, while firmly believing the claims asserted against Sallie Mae have merit, concluded that the Settlement is fair, adequate and reasonable and in the best interest of the Settlement Class. In coming to this conclusion, Plaintiffs' Counsel considered:

- the substantial and immediate benefits provided to members of the Settlement Class, including the discontinued use of the CDR in underwriting student loans for the negotiated time period and disclosure of information related to underwriting factors, which Plaintiffs believe materially reduces the alleged disparate impact against minorities;

- the risk of establishing liability on each claim, including the risk that Plaintiffs may fail to prove a pattern or practice of discrimination based on statistical and anecdotal evident, fail to overcome various defenses, and/or fail to prove damages;

- the risk of certifying and maintaining a Class on each claim through the trial;

- the range of reasonableness of the relief provided by the Settlement in light of the best possible recovery and the attendant risks of litigation;

- the risks and length of trial in the action; and

- the likelihood of appeals and subsequent proceedings necessary.

Since the initiation of this litigation more than three ago, the parties have engaged in extensive discovery, motion practice, mediation and protracted settlement negotiations. Thus, by the time the Settlement Agreement was achieved, both sides were in a position to make informed judgments about the merits of the case and the terms of the Proposed Settlement.

In sum, the standards for preliminary approval are clearly met in this case. The Settlement is the result of serious negotiations. The Settlement is at least sufficiently fair, reasonable and adequate to justify notice to those affected and to give them an opportunity to be heard. *See McReynolds*, 588 F.3d at 803(district court may approve class action settlement "if the settlement is fair, reasonable, and adequate."); *Wal-Mart Stores, Inc. v. VISA U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (citing Manual for Complex Litigation, Third, § 30.42 (1995)); *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (noting the "strong judicial policy in favor of settlements, particularly in the class action context.").

Given the significant risks of establishing liability and damages, settlement is the proper course at this time.

## V.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

To effectuate the Settlement, the parties have stipulated, pursuant to Rules 23(a) and Rule 23(b)(2), to the conditional certification of a class for settlement purposes only. As set forth in the Settlement Agreement, the Settlement Class includes all African American, Hispanic and Native American individuals to whom Sallie Mae, Inc. or any other affiliate or subsidiary of SLM Corporation originated a private student loan from September 15, 2003, through the date of preliminary approval of the Settlement. This Settlement Class is easily defined, and class members can be easily ascertained by definite, objective criteria. *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 93 (2010); *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 97 (S.D.N.Y. 2010); *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 432 (S.D.N.Y. 2009).

For the purposes of settlement only, Plaintiffs seek certification of the Settlement Class pursuant to Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure. As discussed below. the Settlement Class meets all of the requirements of Federal Rule of Civil Procedure 23(a) and (b)(2). Class Plaintiffs, like all putative Class Members, seek to prove a uniform and

concerted common course of wrongful conduct with respect to Sallie Mae's underwriting of private student loans during the Class Period.  Class Plaintiffs, through their Court-appointed Co-Lead Counsel, have thus far successfully prosecuted this litigation on behalf of the proposed Class by, among other things, engaging in extensive discovery and investigation, and reaching the proposed Settlement.  Because the benefits of the underlying litigation apply equally to the Settlement Class as a whole and, as set forth in detail below, this action satisfies all applicable requirements under Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs respectfully request that this Court certify the Class for settlement purposes.

### A.    The Standards for Class Certification

Federal Rule of Civil Procedure 23 imposes requirements for class certification, regardless of whether for settlement or litigation purposes.  In rendering a decision as to the certification of a putative class, the court must determine whether the asserted claims meet the four threshold requirements of Rule 23(a) of the Federal Rules of Civil Procedure, which are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997); *Menkes*, 270 F.R.D. at 89.

### B.    The Proposed Class Satisfies Rule 23(a)

#### a.    The Proposed Class Is so Numerous that Joinder of All Members is Impracticable

For a class action to be appropriate, the proposed class must be so numerous that joinder of all of its individual members would be impracticable. Fed. R. Civ. P. 23(a)(1).  Numerosity is presumed when a class consists of forty or more members.  *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  To fulfill its obligations to establish numerosity, a plaintiff need not allege the exact number or identity of class members, but rather "may make common sense assumptions to support a finding of numerosity."  *In re Blech Sec. Litig.*, 187 F.R.D. 97, 103 (S.D.N.Y. 1999) (citation omitted).  The Settlement Class includes all African American, Hispanic and Native American individuals for to whom Sallie Mae or any other affiliate or subsidiary of SLM Corporation originated a private student loan from September 15,

2003, through the date of preliminary approval of the Settlement.  Plaintiffs reasonably estimate that there are hundreds of thousands of persons in the Settlement Class.  *See* Third Amended Complaint at 21.  Accordingly, numerosity plainly exists.

> ### b. There Exist Questions of Law and Fact Common to the Members of the Class

Rule 23 also requires that plaintiffs' grievances share at least one common question of law or fact.  Fed. R. Civ. P. 23(a)(2); *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010); *Marisol A. v. Guiliani*, 126 F.3d 372, 376 (2d Cir. 1997).  Commonality "is established so long as the plaintiffs can identify some unifying thread among the [class] members' claims.  *Haddock v. Nationwide Financial Services, Inc.*, 262 F.R.D. 97, 116 (D.Conn. 2009).  Here, there are many common issues, as there are numerous "identical questions of both law and fact [which] would be raised by the claims of each class member if these were to be asserted individually." *Menkes*, 270 F.R.D. at 90.  The complaint provides an extensive list, including but not limited to:

(1)     Whether Sallie Mae discriminated against Plaintiffs and Class Members by charging them disproportionately higher interest rates and fees on private student loans than those charged to similarly situated Caucasians depending on the school Plaintiffs and Class Members attended;

(2)     Whether Sallie Mae maintained a corporate policy to extend private student loans on a racially discriminatory basis by concealing material information from Plaintiffs and Class Members, such as the fact that the loans were not extended under the same terms and conditions as those offered to similarly situated Caucasians; and

(3)     Whether Sallie Mae trained, directed or determined that its agents conceal or not disclose Sallie Mae's discriminatory lending practices;

*See* Third Amended Complaint at 22-23.

As African American, Hispanic and Native American individuals subjected to the same business practices, all Settlement Class Members share the same interest in determining whether

Sallie Mae in fact discriminated on the basis of race or national origin and, if so, in remedying this wrong. Their claims are essentially identical, and Plaintiffs seek relief that would benefit all members of the proposed Settlement Class. The alleged existence and operation of unlawfully discriminatory company-wide policies and practices presents the type of interrelated factual and legal issues which make class-wide resolution appropriate.

Moreover, the fundamental factual and legal issues raised in this suit focus not on matters unique to the individual borrower, but on Sallie Mae's corporate-wide policy of using school-specific underwriting techniques, which Plaintiffs allege exert a disparate impact on minority borrowers.

For purposes of this Motion and the proposed Settlement, the predominant common issues of law and fact are whether the proposed Settlement is fair, adequate and reasonable, and whether the proposed Class Notice is adequate. All Settlement Class Members share a common interest in these issues as well. The existence of substantial questions of law and fact with respect to the claims of all putative class members in this action, in the context of litigation as well as the context of the Proposed Settlement, should persuade the Court that the commonality requirement is met.

### c.   The Claims of the Class Plaintiffs are Typical of the Class

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class." Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007) (citing *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)). Here, the Plaintiffs' claims arise from the same factual and legal foundations as do the claims of the other members of the class: the alleged discriminatory use of the CDR, and other school-specific factors in underwriting private student loans. The Plaintiffs' claims are not only similar, but virtually identical, to those of the entire putative class. The fundamental factual and legal issues raised in

this suit focus not on matters unique to the individual borrower, but on Sallie Mae's corporate-wide policy of using specific underwriting techniques, which Plaintiffs allege exert a disparate impact on minority borrowers. As alleged, each class member's claim arises from the same general course of conduct, and each class member would present similar legal arguments to prove Sallie Mae's liability. These characteristics suffice to establish that the Plaintiffs' claims are typical of the claims of the Settlement Class.

### d.    Plaintiffs and Their Counsel Have Fairly and Adequately Prosecuted the Case on Behalf of the Proposed Settlement Class

With Defendants' consent, Plaintiffs Sasha Rodriguez and Cathelyn Gregoire seek appointment as Class Representatives, and the appointment of Christa L. Collins of the law firm of Christa L. Collins, LLC, and John A. Yanchunis of the law firm of James, Hoyer, Newcomer, Smiljanich & Yanchunis, P.A., as Co-Class Counsel. Another prerequisite for class certification is that the class representatives and their counsel "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 267 (2d Cir.2006) (internal quotation marks omitted).

Adequacy of representation "entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). The focus is on uncovering "conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Both Plaintiffs in this action are young, minority women who took out private student loans underwritten by Sallie Mae subject to the same underwriting practices. Each makes the same legal argument that these underwriting policies had a disparate impact on them because of their race and/or national origin. The Plaintiffs have vigorously pursued this litigation and their interests are sufficiently aligned with those of absentee Settlement Class Members. As African-American and Hispanic individuals subjected to the same business practices, all Settlement Class

Members share the same interest in determining whether Sallie Mae in fact discriminated on the basis of race or national origin and, if so, in remedying this wrong.  The interests of the other members of the Settlement Class, therefore, will be protected by the Plaintiffs, as they have been since the inception of this litigation.

As to the second prong, Class Counsel are sufficiently qualified to effectively and adequately represent the proposed Settlement Class.  This Court previously appointed Christa L. Collins of Christa L. Collins, LLC, and John Yanchunis of the law firm of James, Hoyer, Newcomer, Smiljanich & Yanchunis, P.A. as Co-Lead Interim Class Counsel, and in connection with those appointments was apprised of their qualifications to serve as Class Counsel   These firms have significant experience in class actions in general, and racial discrimination cases in particular, as well as other complex litigation.  Along with the Class Representatives, these firms have vigorously protected the interests of the proposed Settlement Class through efforts in the litigation as well as during the settlement process.

### C.     Class Plaintiffs Satisfy the Rule 23(b)(2) Requirements

This class action, which seeks to address alleged racial discrimination, is exactly the type of case for which Rule 23(b)(2) was designed.  *Id*. at 614 ("Civil rights cases against parties charged with unlawful class-based discrimination are prime examples of Rule 23(b)(2) class actions").  In fact, "Rule 23(b)(2) was promulgated essentially as a tool for facilitating civil rights class actions."  James Wm. Moore, *5 Moore's Federal Practice*, §23.43[1][a], at 23-191 (3d ed. 1998).; *see also English v. Town of Huntington*, 448 F.2d 319, 326 (2d Cir. 1971) ("Cases of racial discrimination are particularly cited by the Advisory Committee on Rules as appropriate for class actions within Rule 23(b)(2)").  The Second Circuit has long recognized that the class action device is well suited to eradicate racial discrimination.  *See, e.g., Comer v. Cisneros*, 37 F.3d 775, 796 (2d Cir.1994) (noting that "pattern of racial discrimination cases for injunctive relief against state or local officials for injunctive relief are the 'paradigm' of [Rule] 23(b)(2) class action cases."); *see also United States v. New York City Bd. of Educ.*, 487 F. Supp. 2d 220, 236 (E.D.N.Y. 2007) ("[A] class action under Rule 23(b)(2) has been described as 'a uniquely

appropriate procedure in civil-rights cases, which generally involve an allegation of discrimination against a group as well as the violation of rights of particular individuals.'") (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1776 (3d ed.2005)). Robustness in class action practice is particularly necessary in cases like the present one in which a large group of minorities have been harmed by a systemic discriminatory practice.

Rule 23(b)(2) requires that the class members must have been harmed in essentially the same way by the defendant's acts, thereby making injunctive relief appropriate with respect to class as a whole. Fed. R. Civ. P. 23(b)(2). The 23(b)(2) requirements are met here. The Settlement Class Members have been harmed in essentially the same way by the alleged uniform discriminatory conduct, as discussed above.

In addition to prospective relief in the form of practice changes and disclosures, the Proposed Settlement provides equitable relief in the form of a *cy pres* contribution to organizations that support minorities in the pursuit of higher education and small incentive awards to Class Representatives.

As discussed above, all of the requirements necessary to certify this matter as a class action for purposes of the Settlement have been satisfied, and there are no impediments to the Court's certification of the Settlement Class pending the Final Approval Hearing. The proposed Settlement Class is appropriate for class certification under Fed. R. Civ. P. 23. In addition, Plaintiffs are appropriate for appointment as Settlement Class Representatives and Plaintiffs' Counsel are appropriate for appointment as Settlement Class Counsel.

## VI.   THE PROPOSED NOTICE PROGRAM IS APPROPRIATE AND ADEQUATE

When a class action falls within the classic Rule 23(b)(2) paradigm as it does here, no opt-out procedure is necessary to protect the interests of the class. *See In re Literary Works in Electronic Databases Copyright Litigation*, 509 F.3d 136, 146 (2d. Cir. 2007) ("class members in a Rule 23(b)(2) class seeking only declaratory and injunctive relief are not generally afforded

notice and an opportunity to opt out"); *Robinson*, 267 F.3d at 165 (noting that notice and opt out rights were generally unnecessary in (b)(2) class actions because "there is a presumption of cohesion and unity between absent class members and class representatives").  No opt-out procedure is accorded because the intent behind Rule 23(b)(2) is that suits primarily for injunctive or declaratory relief are "inherently class actions and the decision generally will be applicable to a class of persons affected."  *Newberg, supra*, § 24:81.  As described above, the interests of the Settlement Class are cohesive and homogeneous.  The relief offered in the Settlement is not dependent on adjudication of facts particular to any subset of the Settlement Class and does not require a remedy that differentiates materially among Settlement Class Members.  As a result, an opt-out procedure is not required here.

Although notice may not be required for certification of a Rule 23(b)(2) class with no right of opt out, the Parties have stipulated to notice by publication to the Settlement Class pursuant to Rule 23(e).  Rule 23 accords considerable discretion to a district court in fashioning notice to a class.  *In re Agent Orange Product Liability Litigation MDL No. 381*, 818 F.2d 145, 168 (2d Cir. 1987) (citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979);  see also *Handschu v. Special Services Div.*, 787 F.2d 828, 833 (2d Cir. 1986) ("the district court has virtually complete discretion as to the manner of giving notice to class members.") (citing Fed. R. Civ. P. 23(e); 7A C. Wright & A. Miller § 1797 at 237).  A court's discretion regarding notice is simply subject to the "reasonableness" standards of Due Process.  *See Wal-Mart*, 396 F.3d at 113-14 ("The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness. There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements…").  This means that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Handschu*, 787 F.2d at 832-33 (citing *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314 (1950)); *see also Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983).

To provide notice, Rust Consulting, Inc., a company that specializes in assisting counsel in providing notice to absent class members, has been retained.[2]   The proposal for providing notice involves publication in national editions of Ebony Magazine and People Magazine, Spanish Language Edition, as well as the Native American Times.  All costs associated with the provisions of Class Notice will be paid by Defendants.

Plaintiffs request that the Court approve this method of notice as the best manner of notice available under the circumstances.[3] Notice by publication is utilized widely in Rule 23(b)(2) actions, including discrimination cases.  *Newberg, supra*, § 8:34; *see Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Handschu v. Special Services Div.*, 787 F.2d 828, 833 (2d Cir. 1986) (holding that notice by publication adequately served to notify the Rule 23(b)(2) class of the settlement); *Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981) (holding that district court did not abuse its discretion in declining to order individual notice to Rule 23(b)(2) settlement class); *Marcus v. State of Kansas, Dept. of Revenue*, 209 F. Supp.2d 1179, 1181 (D. Kan. 2002) (finding that notice by publication was sufficient for settlement of Rule 23(b)(2) class action).

In addition, notice by publication is particularly appropriate where, as here, the names and addresses of the members of the Settlement Class cannot be determined by reasonable efforts, making individual notice impracticable.  *See Mullane*, 339 U.S. at 317. ("This Court has not hesitated to approve of resort to publication ... in cases where it is not reasonably possible or practicable to give more adequate warning."); *Carlough v. Amchem Products, Inc.*, 158 F.R.D. 314, 325 (E.D. Pa. 1993) ("For those whose names and addresses cannot be determined by reasonable efforts, notice by publication will suffice under . . . the due process clause"); *Branham v. Gen. Elec. Co.*, 63 F.R.D. 667, 671 (M.D. Tenn. 1974) (approving notice by publication to 23(b)(2) class whose members were unidentifiable at the time).   Sallie Mae does

---

[2]Rust Consulting is a widely recognized leader in settlement administration and has extensive experience in state and federal class actions.

.

not obtain or maintain information on the race of student loan borrowers. Thus, because there is no readily identifiable record of the names and addresses of minority borrowers; and given the size of the class, direct notice by mail is not possible in this instance, notice by publication is the appropriate manner of providing notice to the Class. Plaintiffs also respectfully request that the Court approve the form and content of the proposed Notice and Summary Notice.  *See* Exhibits A-1 and A-2 to the Settlement Agreement.  The Notice is written in simple terminology and includes (i) a description of the class; (ii) a description of the terms of the settlement; (iii) an explanation of the rights of Settlement Class Members; (iv) the names of counsel for the Settlement Class; (v) the fairness hearing date; (vi) a description of eligibility to appear at the hearing; (vii) a statement of the maximum amount of attorneys' fees that may be sought by Class Counsel; (viii) a statement of the procedure and deadline for filing objections to the settlement; and (ix) how to obtain further information.  This notice satisfies the content requirements of Federal Rule of Civil Procedure 23(c)(2).  *Robinson*, 267 F.3d at 167, n. 11 (2d Cir. 2001) ("Generally… notice should: (1) describe succinctly and simply the substance of the action and the positions of the parties; (2) identify the opposing parties, class representatives, and counsel; (3) indicate the relief sought; (4) explain any special risks of being a class member, such as being bound by the judgment; (5) describe clearly the procedures and deadlines for opting out; and (6) note the right of any class member to appear in the action through counsel.") (citing Manual for Complex Litigation §30.211, at 225 (3d ed.1995)).

The form and content of the proposed Notice and Summary Notice, together with the manner of dissemination set forth above is reasonably calculated to reach all Settlement Class Members and is the best form of notice available under the circumstances, in satisfaction of federal law and due process.

## VII.   CONCLUSION

The presence of skilled counsel for all parties, the risks of further litigation, the significant benefits achieved by Plaintiffs' Counsel, and the arm's length negotiations justify

preliminary approval of the Settlement and conditional certification of the Settlement Class. Accordingly, Plaintiffs respectfully request that this Court enter an order preliminarily approving the Proposed Settlement, conditionally certifying the Class for settlement purposes only, appointing Sasha Rodriguez and Cathelyn Gregoire as Class Representatives of the Settlement Class, appointing Christa L. Collins of the law firm of Christa L. Collins LLC,  and John Yanchunis of the law firm of James, Hoyer, Newcomer, Smiljanich & Yanchunis, P.A., as  Co-Class Counsel; approving Rust Consulting, Inc. as the settlement administrator, approving the proposed forms of notice to the Settlement Class, and setting a hearing date for final approval.

Respectfully submitted,

s/*John A. Yanchunis*
John A. Yanchunis
Bar No. phv03360
Nicole C. Mayer
Bar No. phv02327
**JAMES, HOYER, NEWCOMER
SMILJANICH & YANCHUNIS, P.A.**
4830 West Kennedy Boulevard, Suite 550
Tampa, FL  33609-2589
Tel. No. (813) 286-4100
Fax No. (813) 286-4174
jyanchunis@jameshoyer.com

**Attorneys for Plaintiff Sasha Rodriguez
and Co-Lead Class Counsel**

M. Hatcher Norris, Esq.
Butler, Norris & Gold
254 Prospect Avenue
Hartford, CT 06106
Tel. No. (860) 236-6951
Fax No. (860) 236-5263
rnorris@bnglaw.com
Federal Bar No. ct00061
*Local Counsel for Sasha Rodriguez*

s/*Christa L. Collins*
Christa L. Collins
CHRISTA L. COLLINS, LLC

1780 102nd Ave. N., Suite 100
St. Petersburg, FL 33716
ccollins@clcfirm.com

**Attorneys for Plaintiff Cathelyn Gregoire
and Co-Lead Class Counsel**

Joseph B. Burns
ROME McGUIGAN, P.C.
One State St., 13th Floor
Hartford, CT 06103
Tel. No. (860) (493-3410
Fax No. (860) 724-3921
*Local Counsel for Cathelyn Gregoire*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of May, 2011, the foregoing **PLAINTIFFS'
MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AGREEMENT** was served by the Court's CM/ECF System
and a Notice of this filing will be sent to all counsel of record by operation of the Court's
electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

*s/Nicole C. Mayer*
NICOLE C. MAYER